87 N.Y.2d 211 (1995)
661 N.E.2d 1358
638 N.Y.S.2d 577
The People of the State of New York, Appellant-Respondent,
v.
Timothy Miller, Respondent-Appellant.
Court of Appeals of the State of New York.
Argued October 17, 1995
Decided December 7, 1995.
Howard R. Relin, District Attorney of Monroe County, Rochester (Mark W. Pedersen of counsel), for appellant-respondent.
Edward J. Nowak, Public Defender of Monroe County, Rochester (David Juergens of counsel), for respondent-appellant.
Chief Judge KAYE and Judges TITONE, BELLACOSA, SMITH and LEVINE concur with Judge CIPARICK; Judge SIMONS dissents and votes to affirm in a separate opinion.
*212 CIPARICK, J.
The Appellate Division ruled that attempted robbery in the first degree is a nonexistent crime. A Judge of this Court granted the People leave to appeal and defendant leave to cross-appeal for us to consider this ruling. For the reasons that *213 follow, we now hold that attempted robbery in the first degree is a legally cognizable crime.
Defendant was indicted and charged with two counts of murder in the second degree (Penal Law § 125.25 [1], [3]) and two counts of robbery in the first degree (Penal Law § 160.15 [1], [2]) stemming from his participation in a foiled robbery that left the victim dead from a gunshot wound to the neck. There was testimony at trial that defendant was part of a group of about 15 teenagers who approached the victim, Charles Grimes, before Grimes entered a grocery store. Grimes apparently was known in the area for shoplifting clothing and then recycling it for sale, and had just offered to sell a pair of jeans from the plastic bag he was carrying. While Grimes was in the grocery store, defendant and five others from the group congregated by the bleachers outside a nearby recreation center, where one of the teenagers displayed a gun to his companions.
Approximately 45 minutes to an hour later, this group of six returned to the vicinity of the grocery store and defendant declared that he was going to snatch Grimes's bag. Two of the teenagers left, stating they wanted no part of "it." When Grimes subsequently exited the store, the four remaining teenagers pounced on him and defendant attempted to grab the bag. Grimes struggled free, pushed defendant against a wall and hit him with a can. Grimes retrieved his bag, which he dropped during the scuffle, and announced that nothing was going to be taken from him. A shot then rang out. Grimes, holding his bag, bolted with the four teenagers in pursuit. Bystanders testified that they heard 6 to 8 gunshots around the time of this chase. Grimes ultimately collapsed, and a crowd of people gathered around him. The bag of clothing was no longer in sight. A police search of the area failed to turn up a bag containing clothing, although a knit hat and a sweat-shirt were recovered on the sidewalk about 150 feet from the grocery store. Grimes died from the single gunshot wound to his neck. The trial testimony was inconclusive as to which teenager possessed the gun.
At trial, defendant requested that the court charge attempted robbery in the first degree and attempted robbery in the third degree as lesser included offenses of robbery in the first degree as charged in counts three and four of the indictment. Count three of the indictment charged that defendant, in violation of Penal Law §§ 20.00 and 160.15 (1), "forcibly stole property * * * a bag of clothing, shirts and pants from Charles Grimes, and in the course of the commission of the *214 crime or of immediate flight therefrom, caused serious physical injury to Charles Grimes, who was not a participant in the crime." Count four charged that defendant, in violation of Penal Law §§ 20.00 and 160.15 (2), "forcibly stole property * * * and in the course of the commission of the crime or of immediate flight therefrom, was armed with a deadly weapon * * * a handgun." The court granted defendant's charge-down request, and after due deliberation, the jury convicted defendant of attempted robbery in the first degree under count three and acquitted him of all remaining counts. Defendant was sentenced to an indeterminate term of 5 to 15 years.
Defendant appealed, arguing that because one of the components of robbery in the first degree is the unintended result of causing serious physical injury, attempted robbery in the first degree is a legal impossibility as the law does not recognize an attempt to commit a crime with an unintended result (see, People v Campbell, 72 N.Y.2d 602). The Appellate Division agreed, and modified by reducing the judgment of conviction to attempted robbery in the third degree, vacated the sentence and remitted to County Court for resentencing (see, People v Miller, 201 AD2d 109). We now reverse.

I
The essence of the crime of robbery is forcible stealing. Under Penal Law § 160.00, a robbery occurs when a person forcibly steals property by the use of, or the threatened use of, immediate physical force upon another person for the purpose of compelling that person to deliver up property or to prevent or overcome resistance to the taking (see, Penal Law § 160.00 [1], [2]; People v Smith, 79 N.Y.2d 309; People v Lopez, 73 N.Y.2d 214; People v Baskerville, 60 N.Y.2d 374; see also, CJI[NY]2d PL art 160, at 160-1002  160-1003).
The lowest robbery offense, robbery in the third degree, is committed when a person engages in behavior that results in the forcible taking of another's property as stated in the definition of robbery in Penal Law § 160.00 (see, Penal Law § 160.05). The core crime is elevated to robbery in the second degree when defendant is aided by another person or when the consequences of the forcible taking are aggravated because the robber or the accomplice displays a firearm or causes physical injury to a nonparticipant (see, Penal Law § 160.10). The most serious robbery offense, robbery in the first degree, is committed when, in the course of the forcible taking of property or immediate flight from the crime scene, the robber or another participant *215 in the robbery "[c]auses serious physical injury to any person who is not a participant in the crime" (Penal Law § 160.15 [1]), or "[i]s armed with a deadly weapon" (Penal Law § 160.15 [2]), or "[u]ses or threatens the immediate use of a dangerous instrument" (Penal Law § 160.15 [3]), or displays some type of operable firearm (Penal Law § 160.15 [4]).
This gradation of robbery offenses embodies a legislative determination that the presence of one of the enumerated "aggravating factors" exacerbates the core criminal act and increases the danger of serious physical injury to  or, as in this case, causes the death of  a nonparticipant, thus warranting harsher punishment for the robber (see, People v Lopez, 73 NY2d, at 220, supra; People v Baskerville, 60 NY2d, at 381, supra; see also, 1 LaFave and Scott, Substantive Criminal Law § 1.8 [b], at 69; § 3.8 [a], at 343 [1986]). The enhanced severity of the crime is therefore reflected in the statutory designation of the degree of the offense (accord, People v Maldonado, 86 N.Y.2d 631, 634-635).

II
Our law recognizes an attempt to commit a crime as a separate offense that occurs when a person "with the intent to commit a crime * * * engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). A person who fails to perpetrate the object crime, despite committing some act in furtherance of that illegal end, is nevertheless guilty of an attempt because attempted criminal conduct is a danger to organized society and therefore independently culpable even though the intended result does not ensue (see, 2 LaFave and Scott, Substantive Criminal Law § 6.2, at 24; see also, People v Bracey, 41 N.Y.2d 296, 299, rearg denied 41 N.Y.2d 1010; People v Campbell, 72 NY2d, at 605, supra). Of course, the criminal responsibility of a defendant who commits an attempt is less than but dependent upon the object crime that was intended (see, People v Bracey, 41 NY2d, at 299-300, supra).

III
Defendant postulates that attempted robbery in the first degree is a nonexistent crime because robbery in the first degree has a "result-based" strict liability element  serious physical injury to a nonparticipant  that is inconsistent with the specific intent required to commit an attempted forcible taking. In short, defendant asserts, based on this Court's statement in Campbell, that "there can be no attempt to commit a *216 crime which makes the causing of a certain result criminal even though wholly unintended" (People v Campbell, 72 NY2d, at 605, supra). Further, defendant argues that because the crime of robbery in the first degree does not require that the proscribed result  serious physical injury  be in furtherance of the underlying crime, as is the case in felony murder (Penal Law § 125.25 [3]) or assault in the first and second degrees (Penal Law § 120.10 [4]; § 120.05 [6]), an inchoate robbery is not a proper predicate to hold a defendant strictly liable for the conduct of another defendant that results in serious physical injury to a nonparticipant.
Defendant misconstrues the substance of both the crime of robbery in the first degree and an attempt to commit this crime. Notwithstanding the implication by the dissent that the People failed to charge defendant with a crime commensurate with his conduct, it was at defendant's request that the court charged attempted robbery in the first degree. Defendant possessed the requisite intent to commit a robbery and in furtherance of that intent acted to snatch Grimes's bag. The fact that defendant came up short by failing to win possession of the bag renders him culpable of an attempted robbery offense (see, Penal Law §§ 110.00, 160.05; see also, People v Bracey, 41 NY2d, at 300, supra). And, because in the ensuing flight from the foiled robbery defendant and his cohorts caused serious physical injury to the victim, the severity of the original attempted crime is aggravated, as is defendant's culpability, due to the greater consequences of the core crime (see, People v Maldonado, 86 N.Y.2d 631, 634-635, supra). Therefore, the jury properly found defendant guilty of attempted first degree robbery (see, Penal Law §§ 110.00, 160.15).
Contrary to the Appellate Division's conclusion that it is legally impossible to commit the crime of attempted robbery in the first degree because "one of the elements of attempted robbery in the first degree under Penal Law § 160.15 (1) is an unintended result and * * * one cannot have a specific intent to cause an unintended injury" (People v Miller, 201 AD2d, at 113, supra), attempted robbery in the first degree is a cognizable crime, and is particularly germane under the facts of this case. The very structure of the provisions setting forth the degrees of robbery distinguishes this case from People v Campbell, (supra), upon which the Appellate Division relied.
The core robbery offense involves the misappropriation of property under circumstances that pose a danger not only to property but to the person (see, Penal Law § 160.05; 2 LaFave *217 and Scott, Substantive Criminal Law § 8.11, at 437). The culpable mental state is the intent to permanently deprive the owner of that property (see, People v Smith, 79 NY2d, at 315, supra). Whether the robber commits a first, second or third degree robbery offense, the requisite intent remains the same. Thus, the People bear no greater burden to establish a robber's culpable mental state when that person is charged with first degree robbery as compared to a second or third degree robbery. Rather, it is the presence of statutorily designated aggravating factors which elevates the severity of the crime from a robbery in the third degree to a robbery in the second or first degree. The robber's conduct is rendered criminal by the forcible taking  or attempted forcible taking  not by an unintended result, as distinguished from Campbell (see also, Penal Law § 15.10).
In Campbell, we reversed defendant's conviction for attempted assault in the second degree on the ground that such crime is a legal impossibility (People v Campbell, 72 N.Y.2d 602, supra). Assault in the second degree occurs when "[w]ith intent to prevent a * * * police officer * * * from performing a lawful duty, [a person] causes physical injury to such * * * officer" (Penal Law § 120.05 [3]). We reasoned that because this crime imposes strict liability for a result  causing injury  culpability would be imposed even if the resulting injury was "wholly unintended" (People v Campbell, 72 NY2d, at 604-605, supra; see also, People v McDavis, 97 AD2d 302, 303-304). Consequently, we stated that it was of no consequence that the intent specified in Penal Law § 120.05 (3) relates not to the result proscribed by the statute but to the circumstances leading to that result because it is the result  causing injury to the officer  for which defendant is strictly liable whenever that result is produced (see, 72 NY2d, at 605). In contradistinction, the only result proscribed by the robbery statutes is the forcible taking of another's property and it is this act that the law proscribes regardless of the attendant circumstances. It is the robber's intent  or "conscious objective"  to permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act that is prohibited by law (see, People v Smith, 79 NY2d, at 315, supra; see also, Penal Law § 15.05 [1]; § 160.00 [1], [2]; CJI[NY]2d PL art 160, at 160-1002). However, when an attendant circumstance to the robbery is the causing of serious physical injury to a nonparticipant, Penal Law § 160.15 (1) imposes strict liability (see, Penal Law §§ 15.10, 15.15 [2]; see also, People v Coleman, 74 N.Y.2d 381, 385), *218 and elevates the degree of the robbery offense, subjecting the robber to harsher punishment because of the additional grievous consequences produced by the intended forcible taking.
Because strict liability attaches to an aggravating circumstance rather than the proscribed result, it is not the case that a robber charged with attempted robbery in the first degree is being punished for an unintended criminal act, as suggested by the dissent, and as occurred under the second degree assault statute (Penal Law § 120.05 [3]) at issue in Campbell (cf., People v Coleman, 74 NY2d, at 385, supra; People v Saunders, 85 N.Y.2d 339, 343-344). Here, the crime defendant attempted to commit was to compel Grimes to deliver up the bag of clothing, and it is this act that subjects defendant to criminal liability and punishment. That Grimes sustained serious physical injury as a consequence of defendant's criminal act serves to increase the severity of the punishment. Our statement in Coleman that "[t]he difference between this case and Campbell * * * is that in Campbell there was a congruence between the strict liability element and the proscribed result of the actor's criminal conduct" applies with equal force here (People v Coleman, 74 NY2d, at 385, supra).
In Coleman, defendant was charged and convicted of attempted promoting prostitution in the second degree for his attempt to entice a 24-year-old undercover officer, whom he believed to be a 15-year-old runaway, into becoming a prostitute. The statute in issue, Penal Law § 230.30 (2), proscribes promoting prostitution of a person less than 16 years old. Defendant argued that attempted promoting of prostitution in the second degree was a nonexistent crime because it criminalized the causing of an unintended result in violation of Campbell. Like the robbery statute in issue here, Penal Law § 230.30 (2) attaches strict liability to an aggravating circumstance  the age of the victim  not to the proscribed criminal result  promoting prostitution. Therefore, we concluded that because defendant believed his intended victim was 15, not 24, he possessed the mental culpability to complete the underlying offense  promoting prostitution  and the fact that he was mistaken as to the victim's age does not preclude conviction for an attempt of the offense (see, People v Coleman, 74 NY2d, at 385, supra).
Thus, there is no bar to a criminal prosecution of attempted robbery in the first degree. As illustrated by the instant facts, defendant intended to forcibly take Grimes's bag of clothing *219 and deprive Grimes of that property, and it is this intent that renders his conduct criminal. That he ultimately failed in this act does not negate his intent, rendering his conduct culpable as an attempt. The presence of an aggravating factor  the serious physical injury inflicted upon Grimes  merely serves to elevate the degree of the attempted offense and the severity of the punishment.
In view of the foregoing, defendant's cross appeal is academic.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for consideration of the facts pursuant to CPL 470.25 (2) (d) and CPL 470.40 (2) (b).
SIMONS, J. (dissenting).
Attempted robbery in the first degree is a nonexistent crime, in my view, and the Appellate Division correctly reduced defendant's conviction to attempted robbery in the third degree. The result is required by the reasoning expressed in People v Campbell (72 N.Y.2d 602) and contrasted in People v Coleman (74 N.Y.2d 381) and People v Saunders (85 N.Y.2d 339).
A person may be guilty of attempting a crime "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00 [emphasis added]). In People v Campbell we said "an attempt to commit a crime consists of an intent to bring about the result which the particular law proscribes and, in addition, an act in furtherance of that intent" (People v Campbell, 72 NY2d, at 605, supra [emphasis added]). The statute in Campbell had two discrete elements: (1) while intending to interfere with a police officer's performance of a lawful duty; (2) defendant caused physical injury to an officer. The first element requires specific intent; the second is an unintended result of the intentional conduct. "Because the very essence of a criminal attempt is the defendant's intention to cause the proscribed result", we said "it follows that there can be no attempt to commit a crime which makes the cause of a certain result criminal even though wholly unintended" (id.).
The statute in question in this case is similarly structured to the statute in Campbell: it imposes criminal liability when a person: (1) forcibly steals property; and (2) causes serious injury to a nonparticipant during the commission of or flight from the crime (Penal Law § 160.15 [1]). The distinction between Campbell and this case is that in Campbell, the whole of the *220 defendant's criminal liability turned on the unintended result, while here, the enhanced liability turns on the unintended result. Where a crime is enhanced by the occurrence of an unintended result, the predicate crime may be attempted, but the enhanced crime cannot. Thus, while there is no doubt that defendant attempted robbery in the third degree, he could not have attempted the enhanced crime of robbery in the first degree because the enhanced liability is imposed solely by defendant having caused serious injury to a nonparticipant, an unintended result that could not have been attempted.
The majority distinguish this case from Campbell "[b]ecause strict liability attaches to an aggravating circumstance rather than the proscribed result" (majority opn, at 218). To my mind, it is a distinction without a difference; robbery in the first degree proscribes two results  the stealing of property, and the causing of an injury. While a defendant may intend and attempt the first result, he cannot intend, and therefore cannot attempt, the second.
The majority rely on People v Coleman (74 N.Y.2d 381, supra) for the proposition that one can be guilty of attempt when an aggravating circumstance is one of strict liability. In Coleman, however, the aggravating circumstance was not an unintended result, but was a strict liability element of which defendant was mistaken  the age of the person whose prostitution he was promoting. We expressly distinguished that aggravating circumstance from one "which attaches * * * to the proscribed result of the criminal conduct" (People v Coleman, 74 NY2d, at 385, supra). Thus, the fact that the causing of injury is an aggravating circumstance is not controlling  it is the nature of the aggravating circumstance that requires analysis, and when that aggravating circumstance is causing an unintended result, the enhanced crime cannot be attempted.
In People v Saunders (85 N.Y.2d 339, supra), we held that defendant could attempt the crime of criminal possession of a weapon in the third degree, a strict liability offense. We distinguished Campbell on the basis that attempt liability did not turn on whether the attempted crime was one of strict liability, but on whether the crime purportedly attempted proscribed an unintended result (People v Saunders, 85 NY2d, at 343, supra). We expressly recognized that there is a "distinctive, discrete limited category of crimes to which Campbell refers and to which its analysis applies" (id., at 342). The instant case belongs to that category (see also, People v Esquilin, 159 AD2d 632, lv denied 76 N.Y.2d 734 [attempted kidnapping *221 in the first degree (Penal Law § 135.25 [3]) is a nonexistent crime]).
It is worth noting that there is a vehicle for charging defendant with a crime of equal severity to that sought here. The conduct for which defendant was convicted upon a count of attempted robbery in the first degree is the exact conduct proscribed by felony assault in the first degree. Section 120.10 (4) of the Penal Law provides:
"A person is guilty of assault in the first degree when: * * *
"In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants" (emphasis added).
This section imposes the C felony liability that would be imposed for attempted robbery in the first degree (see, Penal Law §§ 160.15, 110.05 [4]).
In my view, concluding that attempted robbery in the first degree is a cognizable crime is contrary to the controlling analysis of People v Campbell, and has no purpose or effect other than to excuse the People for failing to charge defendant with felony assault. Accordingly, I would affirm the order of the Appellate Division.
Order reversed and case remitted to the Appellate Division, Fourth Department, for further proceedings in accordance with the opinion herein.