16-4133-pr
Stuckey v. United States

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2017
No. 16-4133-pr

SEAN STUCKEY,
*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA
*Respondent-Appellee.*[*]

---

Appeal from the United States District Court
for the Southern District of New York.
No. 16-cv-1787 — J. Paul Oetken, *Judge*.

---

ARGUED: SEPTEMBER 29, 2017
DECIDED: DECEMBER 20, 2017

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Before: CHIN and DRONEY, *Circuit Judges*, and RESTANI, *Judge*.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *J.*) denying a motion filed pursuant to 28 U.S.C § 2255, and upholding Petitioner's sentence under the Armed Career Criminal Act (ACCA). Petitioner contends that his prior convictions under subsections (3) and (4) of the New York first degree robbery statute, N.Y. Penal Law § 160.15, do not categorically qualify as violent felonies under the ACCA. We conclude that Petitioner's convictions satisfy the intent requirement for ACCA predicate offenses under the ACCA's "elements" clause. Accordingly, we **AFFIRM** the judgment of the district court.

MATTHEW B. LARSEN, Federal Defenders of New York, New York, NY, *for Petitioner-Appellant*.

NICHOLAS FOLLY, Assistant United States Attorney (Margaret Garnett, Assistant United States Attorney, *of counsel*), *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee.*

---

[**] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

DRONEY, *Circuit Judge*:

In 2007, Sean Stuckey was convicted in the United States District Court for the Southern District of New York of possession of a handgun by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). At sentencing, the district court imposed a sentence of 188 months and ten days' imprisonment. Part of that sentence was the mandatory minimum sentence of 180 months required by the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The ACCA requires such a sentence for violations of 18 U.S.C. § 922(g)(1) if the defendant has three previous convictions in state or federal court for "serious drug offense[s]" or "violent felon[ies]."[1] 18 U.S.C. § 924(e)(1).

In 2016, Stuckey filed a motion in the district court under 28 U.S.C. § 2255 to "vacate, set aside, or correct" his sentence, relying on recent Supreme Court decisions that narrowed the types of

---

[1] 18 U.S.C. § 922(g)(1) provides for a maximum sentence of incarceration of ten years, and no mandatory minimum. *See* 18 U.S.C. §§ 922(g), 924(a)(2).

3

crimes that qualify as predicate offenses under the ACCA. 28 U.S.C. § 2255(a).

In the district court's proceedings concerning his § 2255 motion, Stuckey contended that two of his prior first degree New York robbery convictions were not violent felonies under the ACCA.[2] Stuckey argued that under *Leocal v. Ashcroft*, 543 U.S. 1 (2004), a defendant must intend the degree of "physical force" required by 18 U.S.C. § 924(e)(2)(B)(i) for the penalties imposed by the ACCA to apply. Stuckey reasoned that his prior New York first degree robbery convictions cannot categorically qualify as violent felonies under the ACCA because New York law imposes strict liability on accomplices who do not engage in the particular conduct that elevates the statutory offense to a first degree robbery.

---

[2] Stuckey conceded that his third prior conviction, for second degree assault under New York law, *see* N.Y. Penal Law § 120.05, qualified as a violent felony under the ACCA.

4

The district court rejected this argument, concluding that the robbery statute's intent requirement satisfies *Leocal*'s intent requirement without the need for additional proof that the defendant intended to commit the aggravating acts necessary to elevate the crime to first degree robbery. We agree with the district court that the intent requirement for an offense to qualify as an ACCA predicate was satisfied by Stuckey's two prior first degree robbery convictions. Accordingly, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

In March 2006, Sean Stuckey was on New York state parole and visited his parole office to report that he was having a "problem in his neighborhood." *United States v. Stuckey*, No. 06-cr-339, 2007 WL 2962594, at *2 (S.D.N.Y. Oct. 10, 2007). Because his parole officer was not able to see him at that time, the officer visited Stuckey that evening at his rented room in the Bronx. *Id.* During the visit, the

officer entered Stuckey's room and saw a loaded handgun on top of Stuckey's nightstand, in violation of his parole conditions. *Id.* at *3. Officers from the New York City Police Department arrived and took Stuckey into custody. *Id.* Stuckey was then indicted in the United States District Court for the Southern District of New York for possession of a handgun and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). *Id.* at *6. He was found guilty on July 30, 2007, following a jury trial. *Id.*

At his sentencing on January 10, 2008, the district court (Patterson, Jr., *J.*) sentenced Stuckey to 188 months and 10 days' imprisonment, applying the mandatory minimum of 180 months required by the ACCA, 18 U.S.C. § 924(e)(1). At the time, Stuckey did not contest that three of his prior New York state convictions (one for second degree assault and two for separate first degree robberies) subjected him to enhanced penalties as an armed career criminal. The court determined that Stuckey was subject to the

6

mandatory minimum sentence because these three prior convictions counted as violent felonies under 18 U.S.C. § 924(e)(2)(B).

Following his conviction and sentencing, Stuckey appealed to this Court. On appeal, Stuckey raised various arguments regarding his competency, the suppression and admission of evidence, the constitutionality of 18 U.S.C. § 922(g), the lawfulness of the ACCA after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the district court's consideration of the 18 U.S.C. § 3553(c) sentencing factors. He did not challenge the treatment of his prior New York convictions in calculating his sentence under the ACCA. We affirmed. *United States v. Stuckey*, 317 F. App'x 48 (2d Cir. 2009) (summary order). In 2016, Stuckey filed his motion under 28 U.S.C. § 2255 to vacate his sentence.

During his hearing before the district court on his § 2255 motion, Stuckey argued that recent Supreme Court decisions rendered his two previous first degree robbery convictions not

7

violent felonies under the ACCA. The district court (Oetken, *J.*) denied the motion, holding that the two New York state first degree robbery convictions were violent felonies under the ACCA. Following that decision, the district court issued a certificate of appealability. App. 5–6. This appeal followed.

## DISCUSSION

On appeal, Stuckey argues that his New York first degree robbery convictions are not categorically violent felonies under the ACCA because he must have personally intended the particular enhanced conduct under the two subsections of the New York first degree robbery statute under which he was convicted to qualify the convictions as ACCA predicates. Stuckey relies on two Supreme Court precedents: *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which requires a threshold level of intent for ACCA predicate crimes, and *Johnson v. United States*, 559 U.S. 133 (2010), which clarifies the degree of force necessary for an ACCA predicate. "We review *de novo* the district

8

court's determination of whether a prior offense is a 'violent felony' under the ACCA," *United States v. Lynch*, 518 F.3d 164, 168 (2d Cir. 2008), and conclude that Stuckey's first degree robbery convictions satisfy the ACCA's intent requirement.

**I.     New York First Degree Robbery**

The New York robbery statute sets forth the following as to the aggravating circumstances that elevate the offense to first degree robbery:

> A person is guilty of [first degree] robbery . . . when he forcibly steals property and when, in the course of the commission of the crime . . . he *or another participant* in the crime: 1) Causes serious physical injury to any person who is not a participant in the crime; or 2) Is armed with a deadly weapon; or 3) Uses or threatens the immediate use of a dangerous instrument; or 4) Displays what appears to be a . . . firearm . . . .

N.Y. Penal Law § 160.15 (emphasis added). Both Stuckey and the government agree that the statute does not require that all co-participants in the robbery commit the particular aggravating conduct in order to be convicted of the crime; only one of the co-

9

participants needs to have committed the aggravating conduct.[3] *See* Appellee's Br. 25.

The New York Court of Appeals explained the statute's intent requirement in *People v. Miller*, 661 N.E.2d 1358 (N.Y. 1995). There, the court drew a distinction between the "core robbery offense" and the aggravating circumstances necessary for a first degree robbery. 661 N.E.2d at 1362.[4] To prove the "core robbery offense," the state must establish "[t]he culpable mental state." *Id*. Under the statute, "[i]t is the robber's intent . . . to permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act that is prohibited by law." *Id*. In contrast, "strict liability attaches to an aggravating circumstance." *Id*. at 1363.

---

[3] First degree robbery is a class B felony under New York law, N.Y. Penal Law § 160.15, while second degree robbery is a class C felony, *id*. § 160.10. Class B felonies provide for imprisonment up to 25 years, while class C felonies provide for up to 15 years' imprisonment. N.Y. Penal Law § 70.00(2).

[4] In *Miller*, the New York Court of Appeals dealt with subsection (1) of the first degree robbery statute, which requires serious injury to a victim. 661 N.E.2d at 1360.

The statute "imposes [this] strict liability" where "an attendant circumstance to the robbery [occurs] . . . , subjecting the robber to harsher punishment because of the additional grievous consequences produced by the intended forcible taking." *Id*. at 1362–63.

Here, Stuckey was convicted of the New York first degree robbery statute twice: once under subsection (3), and once under subsection (4).[5] Thus, we must determine whether a conviction for these particular offenses—which require the use, threat, or display of a dangerous instrument or firearm—satisfies the intent requirement for ACCA predicates for all of the crime's participants in light of the strict liability component of the statute.

---

[5] Stuckey initially argued that his convictions were not crimes of violence because the government had not shown under which subsections of New York's first degree robbery statute he was convicted. However, the government then produced certificates of disposition clarifying that Stuckey's convictions were for violations of subsections (3) and (4) of N.Y. Penal Law § 160.15. App. 4. Stuckey no longer disputes that he was convicted under those subsections. As we detail in Part II, these dispositions require us to determine whether his convictions under these particular subsections are violent felonies.

**II.  Categorical and Modified Categorical Approaches**

To determine which prior convictions qualify as violent felonies under the ACCA, we apply a "categorical" approach that asks whether the least of conduct made criminal by the state statute falls within the scope of activity that the federal statute penalizes. *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006). In this case, we therefore must inquire whether Stuckey's prior first degree robbery convictions categorically qualify as "violent felonies" as defined by 18 U.S.C. § 924(e)(2)(B).

This inquiry requires a two-step analysis. We must first identify the "elements of the statute forming the basis of the defendant's conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In doing so, we examine what is "the minimum criminal conduct necessary for conviction under [that] particular [state] statute," *Acosta*, 470 F.3d at 135, mindful that "there must be a 'realistic probability . . . that the State would apply its statute to

conduct'" that constitutes the minimal criminal activity necessary for a conviction, *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Second, we then compare the minimum conduct necessary for a state conviction with the conduct that constitutes a "violent felony" under the ACCA. 18 U.S.C. § 924(e)(2)(B). If the state statute "sweeps more broadly"—i.e., it punishes activity that the federal statute does not encompass—then the state crime cannot count as a predicate "violent felony" for the ACCA's fifteen-year mandatory minimum. *Descamps*, 133 S. Ct. at 2283.

In some instances, an additional step is required because a "statute[] . . . ha[s] a more complicated (sometimes called 'divisible') structure . . . ." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). These statutes "list elements in the alternative, and thereby define multiple crimes." *Id.* at 2249. When a court encounters a statute that might be violated using alternative elements, a court may "look[] to

a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* The court then applies the categorical approach as it normally would, having determined that a statute "list[s] . . . multiple crimes," and having established the particular subsection under which the defendant was convicted. *Id.* This approach is known as the modified categorical approach.

Here, the modified categorical approach applies. New York's first degree robbery statute lists four different aggravating circumstances, or different ways of committing the offense. Both the government and Stuckey agree that he was convicted under N.Y. Penal Law § 106.15 (3) and (4), and thus we must apply the categorical approach only as to these subsections. **[A 10]** Stuckey has not argued that convictions under these subsections do not meet the

14

threshold of violence required by *Johnson v. United States*, 559 U.S. 133 (2010). *See* App. 10–11.[6]

As to the ACCA's intent requirement, we must assume that Stuckey himself did not commit or intend to commit the aggravated conduct that elevated the offenses to first degree robbery. Rather, because of the categorical analysis, we must assume that he was held responsible for the aggravating acts of an accomplice. "[O]ur focus on the minimum conduct criminalized by the state statute" compels this assumption.[7] *Moncrieffe*, 569 U.S. at 191. Accordingly, the only question before us is whether the strict liability aspect of New York first degree robbery causes the statute to "sweep too

---

[6] We need not address in this opinion the question of whether *all* New York robberies qualify as a "violent felony" under the ACCA—i.e., whether just "forcible stealing" requires the degree of force mandated by the 2010 *Johnson* decision.

[7] We note that there is a "realistic probability," *Moncrieffe*, 569 U.S. at 191, that New York would actually apply this statute to co-participants who never intended an aggravating factor to occur during the robbery. *See, e.g.*, *People v. Fingall*, 24 N.Y.S.3d 704, 705 (2d Dep't 2016). ("The court properly instructed the jurors that the prosecution was not required to prove that the defendant had prior knowledge of another perpetrator's intent to display an operable firearm, because such knowledge was not an element of robbery in the first degree.").

15

broadly," criminalizing conduct that the ACCA does not penalize.

*Descamps*, 133 S. Ct. at 2283

**III.    The Armed Career Criminal Act**

The ACCA imposes a fifteen-year mandatory minimum sentence on individuals who are convicted of a violation of 18 U.S.C. § 922(g), and who have "three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). A "violent felony" is defined as

> any crime punishable by imprisonment for a term exceeding one year . . . that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is [one of several enumerated offenses], or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

*Id.* § 924(e)(2)(B). This case concerns only 18 U.S.C. § 924(e)(2)(B)(i), which is known as the "force," or "elements" clause.[8]

---

[8] Although the "violent felony" definition has two separate parts, courts typically treat this language as containing three different clauses. As noted above, the first clause is the "elements" or "force" clause, which comprises all of 18 U.S.C. § 924(e)(2)(B)(i). Section 924(e)(2)(B)(ii) has two separate clauses—clauses two and three of the ACCA. The second clause is the "enumerated offenses" clause, which lists specific types of crimes that count as ACCA predicates. It does not, however, list robbery. The last clause is the residual clause, which the Supreme

16

Two Supreme Court decisions interpreting the ACCA's elements clause provide particular guidance to us here. The first is *Leocal v. Ashcroft*, 543 U.S. 1 (2004). In *Leocal*, the Court addressed the "crime of violence" provision at 18 U.S.C. § 16, which uses language identical to the elements clause of the "violent felony" definition in 18 U.S.C. § 924(e)(2)(B)(i).[9] *Leocal* involved a conviction under a Florida statute criminalizing driving under the influence of alcohol (DUI) and causing serious bodily injury that did not have a *mens rea* requirement. The government argued in *Leocal* that 18 U.S.C. § 16 does not require a predicate offense to have a *mens rea* requirement, and that the DUI offense was therefore a crime of violence under the

Court declared unconstitutionally vague in 2015. *See Johnson v. United States*, 135 S. Ct. 2551 (2015). The Court later held that this holding applies on collateral review. *See Welch v. United States*, 136 S. Ct. 1257 (2016).

[9] As we have previously observed, cases involving the "crime of violence" definition under U.S.S.G. § 4B1.2(a) are "highly persuasive" in interpreting the ACCA's "violent felony" provision, and vice versa. *United States v. Reyes*, 691 F.3d 453, 458 n.1 (2d Cir. 2012); *see also United States v. Walker*, 595 F.3d 441, 443 n.1 (2d Cir. 2010). Similarly, the identical language of the elements clauses of 18 U.S.C. § 16(a) and § 924(e)(2)(B)(i) means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute. *See Johnson*, 559 U.S. at 140 (noting that 18 U.S.C. § 16 is "very similar to § 924(e)(2)(B)(i)").

federal statute. 543 U.S. at 9. The Court held, however, that the elements clause of 18 U.S.C. § 16 "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* In reaching this conclusion, the Court emphasized that the word "use" in the elements clause connotes "active employment." *Id.* Thus, by "giv[ing] words their 'ordinary or natural'" meaning, the Court reasoned that an offense qualifying as a "crime of violence" must require that the defendant acted more than merely negligently in committing that offense. *Id.* (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)).

The second Supreme Court decision is *Johnson v. United States*, 559 U.S. 133 (2010).[10] *Johnson 2010* concerned a Florida state criminal statute for battery. Under the Florida statute, a defendant could face conviction for "'actually and intentionally touch[ing]'" a victim. 559

---

[10] We refer to this *Johnson* case as *Johnson 2010* so as not to confuse it with the 2015 *Johnson* decision, which involved the constitutionality of the ACCA's residual clause. *See Johnson 2015*, 135 S. Ct. at 2555-63.

U.S. at 136 (alteration omitted) (quoting Fla. Stat. § 784.03(1)(a)). The government contended that a conviction under this statute could nevertheless qualify as an ACCA "violent felony." *Id.* at 139. The government reasoned that the ACCA's "physical force" requirement included the "merest touching," because that is how "force" was defined at common law. *Id.*

The Court, however, determined that the "physical force" required by the ACCA's elements clause is more demanding. *Id.* The Court stated that it must "interpret[] the phrase 'physical force' as used in defining . . . the statutory category of 'violent felon[ies].'" *Id.* at 140 (second alteration in original) (quoting 18 U.S.C. § 924(e)(2)(B)); *see also id.* (noting that 18 U.S.C. § 16 and the ACCA "suggest[] a category of violent, active crimes" (quoting *Leocal*, 543 U.S. at 11)). The Court concluded that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* More recently, the Court confirmed

19

that certain "[m]inor uses of force" do not rise to the level of violence that the ACCA requires. *United States v. Castleman*, 134 S. Ct. 1405, 1410–12 (2014).

Thus, ACCA predicate convictions must satisfy these two requirements: (1) intent (as required by *Leocal*) and (2) sufficiently violent conduct (as required by *Johnson 2010*).

**IV.   Application of *Leocal, Johnson 2010,* and the Modified Categorical Approach**

Stuckey argues that we should read *Leocal*'s intent requirement in tandem with the *Johnson 2010* degree of force requirement. Under this approach, Stuckey's New York convictions would qualify as ACCA predicates only if Stuckey intended the increased uses of force, that is, the aggravating conduct of subsections (3) and (4) of the robbery statute. The district court summarized this argument as "encourag[ing] the Court to combine *Leocal* and *Johnson 2010* to hold that in order for an individual's prior conviction to be deemed a violent felony under the ACCA, that

individual must have intended the use of violent force." *Stuckey v. United States*, 224 F. Supp. 3d 219, 227 (S.D.N.Y. 2016). The district court, however, rejected this argument, reasoning that the "ACCA requires only that a crime satisfy *Leocal*'s minimum intent threshold and that it separately clear *Johnson 2010*['s] 'violent force' bar to be deemed a violent felony—nothing more." *Id.* at 228.

We again note that Stuckey does not contest that his first degree robbery convictions satisfy the force requirement described in *Johnson 2010*. The "[u]se[] or threaten[ed] . . . immediate use of a dangerous instrument," N.Y. Penal Law § 160.15(3), or "[d]isplay [of] what appears to be a [firearm]," *id.* § 160.15(4), in the course of a robbery well exceeds the degree of violent physical force the ACCA requires. Such actions satisfy the plain text of the ACCA, which mandates only that the predicate offense have "as an element the use . . . of physical force." 18 U.S.C. § 924(e)(2)(B)(i). The ACCA's text "focuses only on aspects of the crime itself," *Stuckey*, 224 F.

21

Supp. 3d at 228, and mandates that a conviction for the predicate offense require proof of "us[ing] . . . physical force," 18 U.S.C § 924(e)(2)(B)(i); *see also Mathis*, 136 S. Ct. at 2252 (noting that "Congress indicated [through the ACCA's text] that the sentencer should ask only about whether 'the defendant had been convicted of crimes falling within certain categories,' and not about what the defendant had actually done" (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990))).

The intent requirement as to the use of force must also satisfy *Leocal*, however. But, we agree with the district court that the intent and force requirements outlined in *Leocal* and *Johnson 2010* are examined separately. Under New York's first degree robbery statute, the state must first prove that the defendant "inten[ded] . . . to permanently deprive the victim of property by compelling the victim to give up property or quashing any resistance to that act." *Miller*, 661 N.E.2d at 1362. This "requisite intent remains the same"

22

regardless of whether the state charges a first, second, or third degree robbery. *Id.* The statute then imposes strict liability for any aggravating circumstances, "subjecting the robber to harsher punishment because of the additional grievous consequences produced by the intended forcible taking." *Id.* at 1363. "This gradation of robbery offenses embodies a legislative determination that the presence of one of the enumerated 'aggravating factors' exacerbates the core criminal act and increases the danger of serious physical injury to . . . a non-participant, thus warranting harsher punishment for the robber." *Id.* at 1361. "The enhanced severity of the crime is therefore reflected in the statutory designation of the degree of the offense." *Id.*

The New York statute reflects the principle of criminal law that a defendant may be held responsible for actions taken by an accomplice to certain crimes. *See United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938) (recounting the history of criminal liability for the

23

acts of other individuals); Francis Bowes Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 702–04 (1930). Indeed, certain federal offenses also embody this principle. *See Pinkerton v. United States*, 328 U.S. 640 (1946); *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007).

Stuckey's objection is that a co-participant to the robbery might brandish or discharge a firearm without the accomplice knowing, planning, or at all intending for such additional violence to occur. But the ACCA requires only a threshold intent to engage in criminal conduct. The New York statute satisfies this standard because the state must first establish the defendant's intent to commit robbery, and separately establish that during that robbery, a member of the robbery committed one of the aggravating acts for an enhanced penalty to apply.

*Leocal* does not compel a different result. Commission of a first degree robbery in New York meets the requirement that a defendant

have "a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. Although the New York statute allows an individual to be held strictly liable for the display of a weapon, the defendant must *intend* to engage in "forcible stealing." N.Y. Penal Law § 160.15; *see also People v. Chessman*, 429 N.Y.S.2d 224, 229 (2d Dep't 1980) (noting defendant must have intent as to the forcible stealing). Thus, the state must prove that "in using or threatening physical force, [the] defendant's 'conscious objective' was either to compel [the] victim to deliver up property or to prevent or overcome resistance to the taking." *People v. Gordon*, 16 N.E.3d 1178, 1184 (N.Y. 2014) (alterations in original) (internal quotation marks omitted). The defendant must therefore actively and intentionally engage in the commission of the robbery—precisely what *Leocal* requires, and what was not required by the Florida statute at issue in that case.

Decisions from other circuits support this conclusion. For example, in *United States v. Ramon Silva*, the Tenth Circuit

25

determined that it is sufficient that the predicate ACCA offense require general intent as to the conduct constituting the crime. 608 F.3d 663, 673–74 (10th Cir. 2010). The court rejected the argument that a defendant must have a specific intent to "injure or induce fear," which the dissent argued was required by *Leocal*. *Id.* at 679. Rather, the court explained, it was sufficient for the defendant to intentionally engage in "apprehension causing" conduct that threatened the use of physical force—even if the defendant did not intend to cause injury. *Id.* at 673; *see also United States v. Am*, 564 F.3d 25, 33–34 (1st Cir. 2009) (holding that general intent as to a crime involving use of physical force meets the requirements for an ACCA predicate offense). So too here: the defendant need not commit the aggravating conduct, but rather need only intend to engage in the conduct of the underlying robbery.

Furthermore, *Rosemond v. United States* does not affect our conclusion, as Stuckey suggests. 134 S. Ct. 1240 (2014). In that case,

the defendant, Rosemond, was involved in a "drug deal gone bad" when either he or an accomplice shot at a would-be drug buyer after the buyer stole drugs from Rosemond and his fellow drug sellers. *Id.* at 1243. The government charged Rosemond with aiding and abetting a violation of 18 U.S.C. § 924(c),[11] which "provides that 'any person who, during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm,' shall receive a five-year mandatory-minimum sentence, with seven- and ten-year minimums applicable, respectively, if the firearm is also brandished or discharged." *Id.* (alterations in original) (quoting 18 U.S.C. § 924(c)). The district court provided jury instructions that stated Rosemond could be found guilty of aiding and abetting under 18 U.S.C. § 2 if he (1) participated in the crime, and (2) knew his cohort used a firearm during the crime. *Id.* at 1244.

---

[11] The government also charged Rosemond with a direct violation of 18 U.S.C. § 924(c) on the theory that Rosemond discharged the firearm. Only the aiding and abetting portion of *Rosemond* concerns us here.

Rosemond contended that these instructions were insufficient, and the Supreme Court agreed, holding that a "defendant's knowledge of a firearm must be advance knowledge" to result in aiding and abetting liability under 18 U.S.C. § 924(c). *Id.* at 1249. To reach this conclusion, the Court relied on the principle that "a person aids and abets a crime when . . . he intends to facilitate that offense's commission." *Id.* at 1248. Thus, "for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission," a principle that, under *Rosemond*, extends to the decision whether or not the commission of the crime will involve a firearm. *Id.* at 1249.

*Rosemond*, however, simply interpreted the intent requirement for aiding and abetting liability. It thus does not bear on the question of whether a state offense that provides enhanced penalties for a defendant for violent aggravating circumstances under a "strict

liability" regime requires additional intent as to the aggravating factor to count as an ACCA predicate offense. As we have explained, the intent to commit the underlying robbery in the New York statute is sufficient for ACCA purposes.

Thus, having determined that *Leocal* and *Johnson 2010* impose separate thresholds for force and intent in evaluating potential ACCA predicate convictions, we conclude that Stuckey's first degree robbery convictions satisfy the modified categorical approach. Stuckey's convictions meet *Leocal*'s intent requirement because the state was required to prove the robber's "intent . . . to permanently deprive the victim of property by compelling the victim to give up property." *Miller*, 661 N.E.2d at 1362.

**CONCLUSION**

For the foregoing reasons, Stuckey's prior convictions under subsections (3) and (4) of the New York first degree robbery statute, N.Y. Penal Law § 160.15(3)–(4), constitute violent felonies under the

29

ACCA's elements clause. Accordingly, we **AFFIRM** the judgment of the district court.