# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 18-1770-cr

UNITED STATES OF AMERICA,
*Appellee*,

v.

DAVID OJEDA,
*Defendant-Appellant*,

TIMOTHY CANTY,
*Defendant*.

On Appeal from the United States District Court
for the Southern District of New York

SUBMITTED: OCTOBER 30, 2019
DECIDED: FEBRUARY 24, 2020

Before: CABRANES and RAGGI, *Circuit Judges*, and KORMAN, *District Judge*.[*]

——————

On appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York (Carter, *J.*), following defendant David Ojeda's guilty plea to (1) being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1); and (2) obstructing justice, *see id.* § 1512(c)(1), defendant challenges his 15-year prison sentence on the felon-in-possession count. Ojeda argues that this sentence, the minimum mandated by the Armed Career Criminal Act ("ACCA") for persons with three or more prior convictions for violent felony and/or serious drug offenses, *see id.* § 924(e)(1), is unwarranted for two reasons: (1) his prior conviction for New York first-degree robbery is not for a violent felony because the crime's elements do not categorically require the use of physical force as defined in *Curtis Johnson v. United States*, 559 U.S. 133 (2010); and (2) ACCA's definition of a state "serious drug offense" is too vague to encompass his state attempted drug crimes of conviction in light of *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). Ojeda's reliance on the cited Supreme Court precedents is misplaced, and his arguments are defeated by this court's decisions in *United States v. Thrower*, 914 F.3d 770 (2d Cir.), *cert. denied*, 140 S. Ct. 305 (2019); and *United States v. Wallace*, 937 F.3d 130 (2d Cir. 2019).

AFFIRMED.

——————

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Devin McLaughlin, Langrock Sperry & Wool, LLP, Middlebury, Vermont, *for Defendant-Appellant*.

Eli J. Mark, Daniel B. Tehrani, Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York, *for Appellee.*

REENA RAGGI, *Circuit Judge*:

Defendant David Ojeda appeals from a judgment of conviction entered on June 7, 2018, in the United States District Court for the Southern District of New York (Andrew L. Carter, Jr., *Judge*), following his guilty plea to being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1); and to obstructing justice, *see id.* § 1512(c)(1). Ojeda challenges only that part of the judgment sentencing him to 15 years' incarceration on the felon-in-possession count. That sentence is the minimum mandated by the Armed Career Criminal Act ("ACCA") for § 922(g) violators who have three or more convictions for a "violent felony" and/or "serious drug offense." *Id.* § 924(e)(1). The district court determined that ACCA applied in Ojeda's case based on three prior New York State convictions: in 2007, for first-degree robbery, *see* N.Y. Penal Law § 160.15; in 1998, for attempted sale of a controlled substance in the third degree, *see id.* § 220.39; and again in 1998, for attempted possession of a controlled substance with intent to sell in the third degree, *see id.* § 220.16(1). On appeal, Ojeda submits that none of these convictions qualifies as an ACCA predicate. He argues here, as he did before the district court, that *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), compels the

conclusion that ACCA's definition of a state "serious drug offense," *see* 18 U.S.C. § 924(e)(2)(A)(ii), is too vague to be applied constitutionally to his New York attempted drug crimes. For the first time on appeal, Ojeda further argues that *Curtis Johnson v. United States*, 559 U.S. 133 (2010), compels the conclusion that New York first-degree robbery is not a categorical "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i).

For reasons explained herein, we conclude that Ojeda's reliance on the cited Supreme Court precedents is misplaced, and that his arguments are, in fact, defeated by this court's recent decisions in *United States v. Thrower*, 914 F.3d 770 (2d Cir.), *cert. denied*, 140 S. Ct. 305 (2019), and *United States v. Wallace*, 937 F.3d 130 (2d Cir. 2019). Identifying no error in Ojeda's felon-in-possession sentence, we affirm the judgment of conviction in all respects.

## BACKGROUND

### I.      The Crimes of Conviction

The facts pertaining to Ojeda's felon-in-possession and obstruction crimes are quickly stated.

On November 25, 2014, in the vicinity of Madison Avenue and East 111th Street in Manhattan, Ojeda brandished a 9-millimeter pistol while threatening a person with whom he was having an argument. The pistol was stolen, but Ojeda was prohibited from possessing it in any event by 18 U.S.C. § 922(g)(1) because he had previously been convicted of multiple felony crimes. Indeed, the Indictment charging Ojeda with violating § 922(g)(1) advised him that any sentence for that crime would be subject to the 15-year mandatory minimum stated in ACCA because his prior New York first-degree robbery conviction was for a "violent felony," and his two prior

attempted controlled substance convictions were for "serious drug offense[s]."

Following Ojeda's federal arrest for being a felon in possession of a firearm, he enlisted his mother to obstruct justice by having her use false pretenses to retrieve his cellular phone from police custody and then delete potentially incriminating evidence from that phone.

## II. Sentencing

On October 22, 2015, Ojeda pleaded guilty to both the felon-in-possession and obstruction charges. The Probation Department's Presentence Report calculated Ojeda's Sentencing Guidelines offense level as 30, which, with a criminal history category of VI, yielded an advisory sentencing range of 168–210 months' imprisonment. The Department reported that if, based on Ojeda's prior record of convictions, the district court were to identify him as an Armed Career Criminal, ACCA mandated a minimum sentence of 180 months, or 15 years, for the felon-in-possession crime. ACCA states in pertinent part that,

> a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be . . . imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1).

ACCA defines "violent felony" to include any crime having a force element, as well as certain enumerated crimes:

> "[V]iolent felony" means any crime [that, when committed by an adult, is] punishable by imprisonment for a term exceeding one year, [and]

   (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or

   (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

*Id.* § 924(e)(2)(B).

It defines "serious drug offense" by reference to both federal and state law as either,

   (i)  an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), [and other specified provisions of federal law], for which a maximum term of imprisonment of ten years or more is prescribed by law, or

   (ii)  an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in . . . 21 U.S.C. 802), for which a maximum term of imprisonment of ten years or more is prescribed by law . . . .

*Id.* § 924(e)(2)(A).

Preliminary to deciding whether Ojeda was subject to an ACCA sentence for his § 922(g)(1) crime, the district court ordered briefing as to whether *attempted* controlled substance crimes qualify as serious drug offenses under § 924(e)(2)(A)(ii), specifically, whether this court's holding in *United States v. King*, 325 F.3d 110 (2d Cir. 2003), which supports that conclusion, remains good law after *Samuel Johnson v. United States*, 135 S. Ct. 2551 (holding ACCA's § 924(e)(2)(B)(ii) residual clause definition of violent felony void for

vagueness). Upon review of the parties' filings, the district court concluded that Ojeda's attempted controlled substance crimes do qualify as serious drug offenses. Based on that finding, and in the absence of any challenge to Ojeda's first-degree robbery conviction being a violent felony, the district court sentenced Ojeda to the ACCA mandated minimum 15-year term on the felon-in-possession count, with a concurrent 60-month, or five-year, term on the obstruction count.

Ojeda timely filed this appeal.

## DISCUSSION

Whether Ojeda's prior New York State crimes of conviction qualify as ACCA predicates presents two questions of law that we review *de novo*: (1) whether first-degree robbery is a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i);[1] and (2) whether attempted drug sale in the third degree or attempted drug possession (with intent to sell) in the third degree is a "serious drug offense" under § 924(e)(2)(A)(ii). *See United States v. Bordeaux*, 886 F.3d 189, 192 (2d Cir. 2018). Because Ojeda did not raise the first question in the district court, however, our *de novo* review of that matter is limited to plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010) (requiring "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights . . . ; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings" (brackets omitted) (internal

---

[1] Because robbery is not among the crimes enumerated as violent felonies in 18 U.S.C. § 924(e)(2)(B)(ii), we here consider whether Ojeda's first-degree robbery conviction qualifies as a violent felony only under ACCA's elements clause, *see id.* § 924(e)(2)(B)(i).

quotation marks omitted)); *United States v. Boyland*, 862 F.3d 279, 288–89 (2d Cir. 2017). For the reasons explained herein, we conclude that the district court committed no error—plain or otherwise—in identifying Ojeda's prior convictions, both for robbery and attempted controlled substance trafficking, as ACCA predicates.

I. **New York First-Degree Robbery Is a Categorical "Violent Felony" as Defined in 18 U.S.C. § 924(e)(2)(B)(i)**

A defendant's prior conviction can be found to be for a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i) only if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." In *Curtis Johnson v. United States*, the Supreme Court construed "physical force" to mean "*violent* force—that is, force capable of causing physical pain or injury to another." 559 U.S. at 140 (emphasis in original). Last term, in *Stokeling v. United States*, the Court clarified that this force standard "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." 139 S. Ct. 544, 554 (2019). Applying that standard to the Florida robbery statute at issue in *Stokeling*, the Court concluded that the crime was a violent felony under ACCA's elements clause. *See id.* at 554–55.

This court has long recognized New York robbery—in any degree—to be a violent crime under the elements clause of ACCA and other federal laws. *See Stuckey v. United States*, 878 F.3d 62, 72 (2d Cir. 2017) (holding New York first-degree robbery convictions to be for violent felonies under ACCA elements clause); *see also United States v. Pereira-Gomez*, 903 F.3d 155, 164–66 & n.45 (2d Cir. 2018) (holding New York "robbery in any degree is a crime of violence under the 'force clause'" applicable to U.S.S.G. § 2L1.2, and declining to overturn earlier ruling to same effect dating from 1992). In urging us to

conclude otherwise here, Ojeda suggests that these cases are wrongly decided or, at least, that *Stuckey* should be cabined to recognize New York first-degree robbery as a categorical violent felony only in the two particular aggravating circumstances there proved, *i.e.*, when robbery is committed using or threatening the immediate use of a dangerous instrument, *see* N.Y. Penal Law § 160.15(3), or displaying what appears to be a firearm, *see id.* § 160.15(4). These arguments are defeated by our recent decision in *United States v. Thrower*, 914 F.3d 770.

In *Thrower*, this court ruled that New York robbery, even in the third degree—which proscribes "forcibly steal[ing] property" without any aggravating circumstances, N.Y. Penal Law § 160.05—is a categorical violent felony under ACCA. *United States v. Thrower*, 914 F.3d at 776. Thus, "[b]y extension," so too is "robbery in the first degree" without regard to the particular aggravating circumstances proved. *Id.* *Thrower*'s holding controls this panel unless and until reversed by the Supreme Court or this court *en banc*. *See United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009).

Even if we were not so bound, however, we would reject Ojeda's argument that his New York first-degree robbery conviction is not for a violent felony. To explain, New York defines first-degree robbery by reference to two elements. The first requires forcible stealing; the second, an aggravating circumstance:

> A person is guilty of robbery in the first degree [A] when he forcibly steals property and [B] when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
>
> 1. Causes serious physical injury to any person who is not a participant in the crime; or

2. Is armed with a deadly weapon; or

3. Uses or threatens the immediate use of a dangerous instrument; or

4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 160.15.

Ojeda argues that it is possible to commit New York first-degree robbery without the use, attempted use, or threatened use, of physical force as defined in *Curtis Johnson* because, under the second aggravating circumstance, a robber might arm himself with a concealed deadly weapon that is never discharged, displayed, or even referenced during the robbery.[2] To demonstrate that the first-degree robbery statute has, in fact, been applied in this way, Ojeda cites to a footnote in *People v. Pena*, 50 N.Y.2d 400, 407 n.2, 429 N.Y.S.2d 410, 413 n.2 (1980). *See United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) ("[T]here must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not

_____

[2] Although the police arrest report indicates that Ojeda threatened his robbery victim by displaying a handgun, the record does not clearly indicate what aggravating factor was pleaded or proved to support Ojeda's first-degree robbery conviction. Thus, Ojeda argues that his case does not admit modified categorical review as in *Stuckey v. United States*, 878 F.3d at 67, where it was clear that the defendant stood convicted based on the third and fourth aggravating factors. He submits that his case must be viewed by the minimum conduct necessary to prove *any* of the four aggravating factors. *See United States v. Jones*, 878 F.3d 10, 17 (2d Cir. 2017) (holding that, when the record does not support a modified categorical approach, "[w]e instead look to 'the least of [the] acts' proscribed by the statute" (alteration in original) (quoting *Curtis Johnson v. United States*, 559 U.S. at 137)). Even when we do so, however, Ojeda's ACCA sentencing challenge fails for reasons explained in text.

constitute a [violent felony]." (internal quotation marks omitted)).

At the outset, we note that the circumstances Ojeda posits were not at issue in *Pena.* There, a robber armed with a concealed knife verbally threatened to "shoot" his victim. *People v. Pena*, 50 N.Y.2d at 405–06, 429 N.Y.S.2d at 412. Despite the disconnect between the weapon and the threat, the New York Court of Appeals ruled the totality of evidence sufficient to establish the *third* aggravating factor for first-degree robbery, *i.e.*, using or threatening the immediate use of a dangerous instrument. *See id.* at 406–09, 429 N.Y.S.2d at 412–14. Even assuming, however, that *Pena* supports Ojeda's construction of the second statutory aggravator not to require the use or threatened use of physical force,[3] that does not show that New York first-degree

---

[3] The cited footnote draws a distinction between § 160.15 and its predecessor statute, explaining,

> [The] predecessor statute was far less precise, specifying as an aggravating circumstance that the perpetrator was "armed with a dangerous weapon" (Penal Law of 1909, § 2124, subd. 1); it permitted the prosecution for first degree robbery whether the culprit openly menaced the victim with a shotgun or, without issuing any threat to use it, merely had, let us say, a penknife in his pocket. The more subtle grading scheme introduced by the revised Penal Law somewhat mitigated this problem. Thus, only one who commits robbery while carrying a "*deadly* weapon" upon his person is now guilty of robbery in the first degree. However, if he does not carry a weapon classified as "deadly" but instead a more broadly defined "dangerous instrument" the statute now requires a showing not merely of possession but of "use" or threatened "immediate use[,"] on the theory that it was the *employment* of such an instrumentality that was significant.

*People v. Pena*, 50 N.Y.2d at 407 n.2, 549 N.Y.S.2d at 413 n.2 (emphasis in original) (citations omitted).

robbery can be committed without such force.

The flaw in Ojeda's reasoning is his singular focus on the aggravating element of first-degree robbery while completely ignoring the foundational element being aggravated, *i.e.*, forcible stealing. That element, as this court has recognized, must be proved for every degree of robbery in New York. *See United States v. Thrower*, 914 F.3d at 776; *United States v. Pereira-Gomez*, 903 F.3d at 166; *Stuckey v. United States*, 878 F.3d at 70. And that element categorically requires the use of physical force.

This is evident from New York's definition of "forcible stealing":

> when, in the course of committing a larceny, [a person] *uses or threatens the immediate use of physical force* upon another person for the purpose of:
>
> 1.  Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>
> 2.  Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00 (emphasis added). This language "matches ACCA's definition of a 'violent felony.'" *United States v. Thrower*, 914 F.3d at 777; *see United States v. Pereira-Gomez*, 903 F.3d at 165 (holding, by reference to New York's definition of "forcible stealing," that "[b]y its plain language, . . . New York's robbery statute includes as an element the use of violent force"). This is hardly surprising. New York's definition of "forcible stealing" "is modeled on the common law definition of robbery," which requires "the amount of force

necessary to overcome a victim's resistance." *United States v. Thrower*, 914 F.3d at 775 (quoting *Stokeling v. United States*, 139 S. Ct. at 555). And, as the Supreme Court has explained, "the term 'physical force' in ACCA encompasses the degree of force necessary to commit common-law robbery." *Stokeling v. United States*, 139 S. Ct. at 555. *Curtis Johnson* recognized as much when, in defining physical force, it relied on a definition that "specifically encompassed robbery: [f]orce consisting in a physical act, *esp. a violent act directed against a robbery victim*." *Id.* at 553 (alteration in original) (emphasis in original) (internal quotation marks omitted). Thus, when in *Stokeling* the Supreme Court recognized Florida robbery as a violent felony, it explained that "ACCA encompasses the degree of force necessary to commit common-law robbery, and . . . Florida robbery requires that same degree of 'force.'" *Id.* at 555.

The same reasoning informs this court's decisions in *Thrower*, *Pereira-Gomez*, and *Stuckey* recognizing a physical-force element in any degree of New York robbery. We reiterate that conclusion here. Even if, as Ojeda argues, it is possible to satisfy the aggravating element of first-degree robbery through circumstances that do not themselves require the use or threatened use of physical force, it is not possible to satisfy the forcible taking element of New York robbery without physical force as defined by the Supreme Court in *Curtis Johnson* and *Stokeling*.

Thus, the district court, far from committing plain error, correctly concluded that Ojeda's 2007 New York first-degree robbery conviction was for a violent felony as defined in ACCA's elements clause.

## II. Ojeda's Attempted Controlled Substance Crimes Are "Serious Drug Offenses" as Defined in 18 U.S.C. § 924(e)(2)(A)(ii)

ACCA defines "serious drug offense" to include those state law crimes "*involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a [federally recognized] controlled substance" punishable by a maximum prison term of ten years or more. 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Ojeda argues that the highlighted word "involving" is too vague to alert average persons to what conduct might constitute a serious drug offense beyond the actual manufacture, distribution, or possession (with intent to manufacture or distribute) of controlled substances. Specifically, he argues that the word is too vague to encompass the New York attempted drug sale and possession with intent to sell crimes for which he was convicted in 1998.

Ojeda acknowledges that this court ruled to the contrary in *United States v. King*, 325 F.3d 110, 115 (2d Cir. 2003). There, we expressly recognized New York attempted possession of a controlled substance with intent to sell as a serious drug offense under ACCA.[4] He nevertheless maintains that *King* must be reconsidered in light of

---

[4] Every other circuit to address the issue since *King* has agreed. *See United States v. Daniels*, 915 F.3d 148, 152 (3d Cir. 2019) (holding ACCA's definition of serious drug offense encompasses Pennsylvania attempt and accomplice liability crimes); *United States v. Coleman*, 700 F.3d 329, 339 (8th Cir. 2012) (holding attempted sale of controlled substance involves distributing or possessing with intent to distribute so as to qualify as serious drug offense under ACCA); *United States v. Williams*, 488 F.3d 1004, 1008–09 (D.C. Cir. 2007) (holding attempted distribution of cocaine qualifies as serious drug offense under ACCA); *United States v. Winbush*, 407 F.3d 703, 705–08 (5th Cir. 2005) (holding Louisiana attempted possession of cocaine with intent to distribute qualifies as serious drug offense under ACCA).

*Samuel Johnson v. United States*, 135 S. Ct. 2551.  The Supreme Court there held another definitional provision of ACCA, specifically, § 924(e)(2)(B)(ii)'s residual clause definition of violent felony, unconstitutionally vague.  Ojeda submits that just as the phrase "conduct that presents a serious potential risk of physical injury" in § 924(e)(2)(B)(ii) "fails to give ordinary people fair notice of the conduct it punishes," *id.* at 2556 (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)), so the phrase "involving manufacturing, distributing, or possessing" in § 924(e)(2)(A)(ii) suffers from the same defect.

The argument is defeated by this court's post-*Samuel Johnson* decision in *United States v. Wallace*, 937 F.3d 130.  There, we cited approvingly to *King*'s recognition that the word "involving" has "expansive connotations," which signal § 924(e)(2)(A)(ii)'s reach "beyond the precise offenses of distributing, manufacturing, or possessing" drugs.  *Id.* at 142.  We concluded therefrom that just as an attempt to possess a controlled substance (the crime of conviction in *King*) "involves possessing a controlled substance, so too does an attempt to sell—or to offer or agree to sell—a controlled substance involve distributing a controlled substance."  *Id.* at 142–43 (alterations and ellipses omitted) (internal quotation marks omitted).  Thus, such attempt crimes qualify as serious drug offenses under ACCA.  *See id.* at 144.

We recognize that, in reaching this conclusion, *Wallace* did not specifically discuss *Samuel Johnson*.  The omission is irrelevant, however, because nothing in *Samuel Johnson* warrants a different conclusion.

The word identified as unconstitutionally vague in *Samuel Johnson* is not "involving" but "risk."  The Supreme Court concluded

that the latter word as used in the residual clause of ACCA's violent felony definition left "grave uncertainty about *how* to estimate the risk posed by a crime," particularly "a judicially imagined 'ordinary case' of a crime." *Samuel Johnson v. United States*, 135 S. Ct. at 2557 (emphasis added). Further, it left "uncertainty about *how much risk* it takes for a crime to qualify as a violent felony." *Id.* at 2558 (emphasis added). Such uncertainties do not arise with respect to the word "involving."[5] Although we have recognized that word to have "expansive connotations," allowing § 924(e)(2)(A)(ii) to reach beyond substantive manufacturing, distribution, and possession drug crimes, *United States v. King*, 325 F.3d at 113, that does not mean that it is boundless, much less unconstitutionally vague. Indeed, when the word is given its ordinary meaning, it focuses attention on the elements of a drug crime, not on some hypothetical "ordinary case."

To explain, in *Biocad JSC v. Hoffman-La Roche*, 942 F.3d 88 (2d Cir. 2019), this court construed the word "involving" as used in the Foreign Trade Antitrust Improvements Act, *see* 15 U.S.C. § 6a (stating that Sherman Act "shall not apply to conduct *involving* trade or

---

[5] At least one other circuit has held, in a precedential opinion, that *Samuel Johnson* did not invalidate—implicitly or otherwise—the definition of the word "involving" in the context of a serious drug offense. *See United States v. Cain*, 877 F.3d 562, 563 (5th Cir. 2017) (holding that *Samuel Johnson* "addressed the residual clause under the violent-felonies portion of the ACCA" and did not "expressly or implicitly overrule" earlier decisions describing word "involving" in "serious-drug-offense portion" of ACCA (internal quotation marks omitted)). Other circuits have held in non-precedential summary orders that *Samuel Johnson* did not implicitly invalidate other ACCA definitions. *See, e.g., United States v. Hunter*, 749 F. App'x 811, 813 (11th Cir. 2018) (summary order); *United States v. Washington*, 726 F. App'x 483, 484 (6th Cir. 2018) (summary order); *United States v. Cilla*, 712 F. App'x 880, 884 (11th Cir. 2017) (summary order); *United States v. Collazo*, 672 F. App'x 796, 797 (10th Cir. 2016) (summary order).

commerce (other than import trade or import commerce) with foreign nations" (emphasis added)).  While acknowledging the "expansive connotations" of "involving,*" Biocad JSC v. Hoffman-La Roche*, 942 F.3d at 97 (quoting *United States v. King*, 325 F.3d at 113), we observed that the "most common meaning" of the word "is including (or having) as a necessary feature, accompaniment, or consequence," and concluded that 15 U.S.C. § 6a used the word in that sense, *id.* at 96 (citing OXFORD ENGLISH DICTIONARY (2d ed. 1989) and AMERICAN HERITAGE COLLEGE DICTIONARY (3d ed. 1997) definitions of "involve").

Applying that "common meaning" here, we conclude that the "necessary features" of a crime are its elements.  Indeed, that conclusion appears dictated by *Kawashima v. Holder*, 565 U.S. 478 (2012).  The Supreme Court there ruled that determining whether tax crimes "involve fraud or deceit," so as to constitute aggravated felonies subjecting convicted aliens to deportation, requires "a categorical approach" that depends on whether "the elements of the offenses" establish that the crimes involve fraud or deceit.  *Id.* at 483 (concluding that fraud and deceit are elements both of knowingly and willfully making false tax returns and knowingly and willfully aiding in the making of such returns).

In considering whether the elements of Ojeda's attempted drug crimes are "manufacturing, distributing, or possessing" controlled substances, we begin by recognizing that a crime's elements serve to give notice of both the *actus reus* proscribed by a particular crime and the *mens rea* required for culpability.  Where manufacture, distribution, or possession of a controlled substance is a crime's *actus reus* element, the crime will generally be substantive.  Where manufacture, distribution, or possession defines the *mens rea* element, the crime may also be inchoate, as in the case of attempt or conspiracy.

17

In the latter circumstance as well as the former, however, the element serves fair notice on ordinary persons that the crime necessarily "*involv[es]* manufacturing, distributing, or possessing" a controlled substance so as to constitute a serious drug offense under ACCA. 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added); *see Kolender v. Lawson*, 461 U.S. at 357–58 (discussing "fair notice" necessary to avoid unconstitutional vagueness).[6]

The conclusion that "involving" reasonably identifies inchoate as well as substantive drug crimes is only bolstered by 18 U.S.C. § 924(e)(2)(A)(i). Congress there defines "serious drug offense" by reference to federal law, including any "offense under the Controlled Substances Act (21 U.S.C. 801 et seq.)." That federal law proscribes not only the substantive manufacture, distribution, and possession of controlled substances, but also related attempts and conspiracies to manufacture, distribute, or possess controlled substances. *See* 21 U.S.C. § 846. Further, it prescribes identical punishments for substantive and inchoate manufacture, distribution, or possession crimes, signaling Congress's view that they are equally serious drug offenses. *See id.* From this statutory structure, we conclude that in identifying state offenses qualifying as serious drug offenses in 18 U.S.C. § 924(e)(2)(A)(ii), Congress used the word "involving" to

---

[6] Indeed, the significance of a *mens rea* element in providing notice is evident in a case presently before the Supreme Court. *See Shular v. United States*, No. 18-662 (argued Jan. 21, 2020). Defendant there argues that his state substantive drug conviction for selling a controlled substance does not "involve" distribution—and therefore is not a serious drug offense— because the law under which he was convicted does not require proof of knowledge as to the substance's illicit nature. We need not await the outcome of that case because Ojeda's attempt crimes of conviction clearly require such knowledge. *See* N.Y. Penal Law §§ 110.00, 220.16(1), 220.39 (discussed *infra* at 19–20).

18

reference both substantive crimes of actual manufacture, distribution, and possession, and inchoate attempt or conspiracy crimes of intended manufacture, distribution, and possession. *See United States v. Daniels*, 915 F.3d at 157 ("There was no reason for Congress to add specific language regarding attempt crimes because it had already included the term 'involving'—a term that . . . clearly encompasses attempts.").

There can be no question that the *mens rea* element of Ojeda's attempt crimes of conviction required proof that he specifically intended (1) to distribute (indeed, to sell) what he knew was a controlled substance, and (2) to possess what he knew was a controlled substance with intent to distribute it. New York law states that a person is guilty of third-degree criminal sale of a controlled substance "when he *knowingly* and unlawfully sells . . . a [controlled substance]." N.Y. Penal Law § 220.39(1) (emphasis added). A person is guilty of third-degree criminal possession of a controlled substance "when he *knowingly* and unlawfully possesses . . . a [controlled substance] with intent to sell it." *Id.* § 220.16(1) (emphasis added). A person is guilty of attempt to commit either of these crimes "when, *with intent to commit [the] crime*, he engages in conduct which tends to effect the commission of such crime." *Id.* § 110.00 (emphasis added); *see also People v. Acosta*, 80 N.Y.2d 665, 670, 593 N.Y.S.2d 978, 981 (1993). In New York, "a person can be convicted of an attempt to commit an offense only if it is proven that he came 'very near' or 'dangerously near' to successfully completing the intended crime." *United States v. King*, 325 F.3d at 114 (quoting *People v. Acosta*, 80 N.Y.2d at 670, 593 N.Y.S.2d at 981, and collecting other New York cases to same effect). Where a defendant, such as Ojeda, is thus found to have intended to sell, or to have possessed with intent to sell, what he knew were controlled substances and, indeed, to have come

19

dangerously near to achieving that intended objective, he can hardly claim to have lacked fair notice that his conviction was for a crime "involving" the distribution of a controlled substance.

Thus, we reject Ojeda's vagueness challenge to 18 U.S.C. § 924(e)(2)(A)(ii), and we conclude that the district court correctly identified his 1998 convictions to be for two serious drug offenses. With prior convictions for two serious drug offenses and for a violent felony, Ojeda had to be sentenced for his § 922(g)(1) crime to a mandatory minimum term of 15 years' imprisonment pursuant to ACCA.

## CONCLUSION

To summarize, we conclude as follows:

(1) First-degree robbery, like every degree of robbery under New York law, is a violent felony as defined in ACCA, *see* 18 U.S.C. § 924(e)(2)(B)(i), because the forcible-takings element common to New York robbery in every degree requires the use or threatened use of physical force as defined by the Supreme Court in *Curtis Johnson v. United States*, 559 U.S. 133, and *Stokeling v. United States*, 139 S. Ct. 544. This court has previously so recognized in *United States v. Thrower*, 914 F.3d at 770, and *Stuckey v. United States*, 878 F.3d 62, and in a Sentencing Guidelines context in *United States v. Pereira-Gomez*, 903 F.3d 155. Ojeda cannot urge otherwise by focusing only on the aggravating element of first-degree robbery, while ignoring the forcible-takings element.

(2) *Samuel Johnson v. United States*, 135 S. Ct. 2551, which invalidated ACCA's residual clause definition of violent felony as unconstitutionally vague, does not undermine this court's precedents, both before and after *Samuel Johnson*, recognizing

20

attempted drug sales or attempted drug possession with intent to sell in violation of New York law as serious drug offenses under ACCA. *See United States v. Thrower*, 914 F.3d 770; *United States v. King*, 325 F.3d 110. Whether a crime's *actus reus* element proscribes actual manufacture, distribution, or possession of a controlled substance, or a crime's *mens rea* element requires intent knowingly to engage in such conduct, a person is given fair notice that the crime *involves* manufacture, distribution, or possession and, thus, qualifies as a serious drug offense under ACCA.

(3) The district court correctly followed controlling precedent in identifying defendant's two prior New York State drug convictions, one for attempted drug sale and the other for attempted drug possession with intent to sell, as serious drug offenses under ACCA. Further, in light of those two drug convictions, as well as defendant's conviction for the violent felony of New York first-degree robbery, the district court correctly sentenced defendant to the ACCA mandated minimum term of 15 years' incarceration on the § 922(g)(1) felon-in-possession count of conviction in this case.

Accordingly, the judgment of conviction is **AFFIRMED**.