# Matter of POUGATCHEV, Respondent

*Decided May 22, 2023*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A conviction for burglary of a building under section 140.25(1)(d) of the New York Penal Law is not categorically an aggravated felony burglary offense under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (2018), because the statute is overbroad and indivisible with respect to the definition of "building" under New York law.

(2) A conviction for displaying what appears to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm while committing burglary under section 140.25(1)(d) of the New York Penal Law necessarily involves the use, attempted use, or threatened use of physical force against the person or property of another and therefore constitutes an aggravated felony crime of violence under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F).

FOR THE RESPONDENT: Yuriy Pereyaslavskiy, Esquire, Albany, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Donald W. Cassidy, Associate Legal Advisor

BEFORE: Board Panel: GOODWIN and WILSON, Appellate Immigration Judges. Concurring and Dissenting Opinion: BROWN, Temporary Appellate Immigration Judge.

GOODWIN, Appellate Immigration Judge:

In a decision dated September 24, 2019, the Immigration Judge found the respondent removable as charged for having been convicted of an aggravated felony. *See* section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) (2018). The respondent appeals from the Immigration Judge's decision ordering him removed. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a lawful permanent resident, was convicted in 2017 of burglary in the second degree in violation of section 140.25(1)(d) of the New York Penal Law. The Department of Homeland Security ("DHS") initiated removal proceedings against the respondent, charging him with removability under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), for

having been convicted of an aggravated felony theft or burglary offense under section 101(a)(43)(G) of the INA, 8 U.S.C. § 1101(a)(43)(G) (2018), and an aggravated felony crime of violence under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F) (2018).

The respondent admitted that he was convicted of burglary under section 140.25(1)(d) of the New York Penal Law and that he received a sentence of at least 1 year imprisonment. However, he argues that his conviction is not for an aggravated felony and does not render him removable as charged.

The Immigration Judge found that the respondent's conviction was for an aggravated felony burglary offense. He did not decide whether the respondent had been convicted of a crime of violence. For the following reasons, we conclude that the respondent has not been convicted of an aggravated felony theft or burglary offense as defined in section 101(a)(43)(G) of the INA, 8 U.S.C. § 1101(a)(43)(G). However, the respondent has been convicted of an aggravated felony crime of violence as defined in section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F), and is thus removable from the United States.

## II. ANALYSIS

Burglary in the second degree under the New York Penal Law was defined at all relevant times as follows:

> A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:
>     1. In effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
>         (a) Is armed with explosives or a deadly weapon; or
>         (b) Causes physical injury to any person who is not a participant in the crime; or
>         (c) Uses or threatens the immediate use of a dangerous instrument; or
>         (d) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
>     2. The building is a dwelling.
> Burglary in the second degree is a class C felony.

N.Y. Penal Law § 140.25(1)(d) (McKinney 2017).

DHS bears the burden of proving that the respondent is removable for having been convicted of an aggravated felony. INA § 240(c)(3)(A), 8 U.S.C. § 1229a(c)(3)(A) (2018). In determining whether the respondent has been convicted of an aggravated felony, we employ the categorical approach, which requires us to focus on the elements of the state offense. *Matter of Chairez*, 26 I&N Dec. 819, 821 (BIA 2016). "Under this approach we look 'not to the facts of the particular prior case,' but instead to whether

'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (citation omitted).

"By 'generic,' we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Id.* "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Id.* at 190–91 (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

We recently analyzed New York's second degree burglary statute in *Matter of V-A-K-*, 28 I&N Dec. 630 (BIA 2022). In that case, we concluded that the statute "clearly is divisible." *Id.* at 632 (holding that subsections (1) and (2) describe separate crimes); *see also Mathis v. United States*, 579 U.S. 500, 505 (2016) ("A single statute may list elements in the alternative, and thereby define multiple crimes."). We have no reason to depart from this prior determination, particularly because the respondent concedes he is convicted of violating subsection (1)(d) of section 140.25 of the New York Penal Law.

## A. Aggravated Felony Theft or Burglary Offense

The Supreme Court of the United States has repeatedly defined generic burglary as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Quarles v. United States*, 139 S. Ct. 1872, 1875 (2019) (emphasis omitted) (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). In *Matter of V-A-K-*, we analyzed burglary of a dwelling under section 140.25(2) of the New York Penal Law and concluded that it fell within this generic definition of burglary. 28 I&N Dec. at 634; *see also* N.Y. Penal Law § 140.00(3) (McKinney 2017) (defining the term "dwelling"). Unlike under subsection (2), for all other types of burglary under this statute, the least of the acts criminalized is burglary of a building. *See* N.Y. Penal Law § 140.00(2) (McKinney 2017) (defining the term "building"). We did not decide in *Matter of V-A-K-* whether burglary of a building under New York law falls within the generic definition of burglary. 28 I&N Dec. at 634 n.7. We must now resolve that question.[1]

The Supreme Court has stated that the generic "term 'burglary' must include 'ordinary,' 'run-of-the-mill' burglaries as well as aggravated ones."

---

[1]  *Matter of V-A-K-* addressed burglary of a dwelling, which is distinguishable from burglary of a building. This case thus does not change our holding in *Matter of V-A-K-*.

*United States v. Stitt*, 139 S. Ct. 399, 405 (2018) (citing *Taylor*, 495 U.S. at 597). This definition, however, is not without limits. For example, the Supreme Court in *Taylor* noted that a Missouri law criminalizing the breaking and entering of "*any* booth or tent, or any boat or vessel, or railroad car" would not categorically fall within the generic definition of burglary. 495 U.S. at 599 (emphasis added). In *Mathis*, 579 U.S. at 507, the parties agreed that an Iowa statute covering "any building, structure, . . . *land, water or air vehicle*, or similar place adapted for overnight accommodation of persons [or used] for *the storage or safekeeping of anything of value*" was broader than the generic definition of burglary. Iowa Code § 702.12 (2013) (emphasis added).[2]

We thus turn to New York's definition of "building" in the context of burglary and related offenses.

> "Building," in addition to its ordinary meaning, includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer. Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building.

N.Y. Penal Law § 140.00(2). Parts of this provision undoubtedly fall within the generic definition of burglary. A "structure, vehicle or watercraft used for overnight lodging of persons" meets this definition. *See United States v. Stitt*, 139 S. Ct. at 405–07. Just as plainly, however, an "inclosed motor truck" under section 140.00(2) of the New York Penal Law falls outside the "building or other structure" element of generic burglary because New York law treats such trucks as "buildings" even if used only for storage or recreation, as opposed to residential or business purposes. *People v. Thompson*, 714 N.Y.S.2d 264, 264–65 (N.Y. App. Div. 2000) (holding that "no use-based qualification applies to the question of what constitutes an 'inclosed motor truck,'" and explaining that "[w]hile the statutory phrase 'used by persons for carrying on business therein' applies to the term 'vehicle', it does not apply to the term 'inclosed motor truck' set forth, in the disjunctive, later in the same subdivision").[3]

---

[2] The question presented in *Mathis* addressed the divisibility of the statute at issue, rather than the precise definition of generic burglary. The Court did recognize that the Iowa statute at issue reached "a broader range of places" than a building or other structure required for a generic burglary. *Mathis*, 579 U.S. at 507.

[3] As the "inclosed motor truck" clause of section 140.00(2) makes New York's burglary statutes categorically overbroad vis-à-vis the "building or other structure" element of generic burglary, we need not assess the scope of the statute's "vehicle . . . used by persons for carrying on business" clause.

This definition of "building" in section 140.00(2) is not further divisible. Second degree burglary only refers to a general "building," and there is no indication that the specific type of building is an element that must be proven beyond a reasonable doubt. This statutory term resembles the example given by the Supreme Court in *Mathis* of a statute requiring the "use of a 'deadly weapon' as an element of a crime and further provid[ing] that the use of a 'knife, gun, bat, or similar weapon' would all qualify." 579 U.S. at 506. Such a list provides "diverse means of satisfying a single element of a single crime." *Id.* Because the "statutory list is drafted to offer 'illustrative examples,' . . . it includes only a crime's means of commission." *Id.* at 518.

"[A]uthoritative sources of state law" further support our conclusion that the term "building" is not divisible. *Id.* The relevant model jury instructions for section 140.25 cut in favor of finding the definition of "building" to be an indivisible list of means. *See Matter of Salad*, 27 I&N Dec. 733, 736 (BIA 2020) (examining a state's model jury instructions to determine the elements of a criminal statute). New York has separate model jury instructions for each provision of section 140.25, and these instructions refer to the term "building" generally.[4] *See* N. Y. Crim. Jury Instr. & Model Colloquies, Penal Law § 140.25(1)(a), (b), (c), (d) (May 2018). The instructions state that the definition of "building" may be given "*where appropriate*." *Id.* If the specific nature of the building were an element rather than a means, this instruction would necessarily *always* be appropriate to give. Therefore, we conclude that the respondent's conviction for burglary of a building under section 140.25(1)(d) is not categorically an aggravated felony burglary offense because the statute is overbroad and indivisible with respect to the definition of "building" under New York law.

Second degree burglary under New York law is also not an aggravated felony theft offense. The Supreme Court, the courts of appeals, and this Board have accepted a generic definition of theft as the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007) (citation omitted); *see also Matter of Garcia-Madruga*, 24 I&N Dec. 436, 438 (BIA 2008). Second degree burglary under New York law involves the intent to commit *a* crime, and there is no requirement that a burglar take property or otherwise exercise control of property without consent. *See* N.Y. Penal Law § 140.25. Accordingly, the respondent has not been convicted of an aggravated felony within the meaning of section 101(a)(43)(G) of the INA, 8 U.S.C. § 1101(a)(43)(G).

---

[4]   The instruction for section 140.25(2) of the New York Penal Law necessarily addresses burglary of a dwelling.

B.  Aggravated Felony Crime of Violence

We thus next decide whether DHS has sustained its burden to establish that the respondent has been convicted of an aggravated felony crime of violence.  *See* INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).  We acknowledge that the Immigration Judge did not reach the aggravated felony crime of violence issue.  However, the parties had an opportunity to brief both aggravated felony issues before the Immigration Judge.  Additionally, we requested supplemental briefing to allow the parties to address the issue, and both parties filed supplemental briefs.[5]  The issue of whether a state court conviction categorically falls within the INA's definition of an aggravated felony is an issue of law we review de novo.  *See Matter of Cervantes Nunez*, 27 I&N Dec. 238, 239–40 (BIA 2018); 8 C.F.R. § 1003.1(d)(3)(ii) (2023).  There are no underlying factual issues, as the respondent conceded that he was convicted of violating section 140.25(1)(d) of the New York Penal Law.  *Cf. Mellouli v. Lynch*, 575 U.S. 798, 804 (2015) ("An alien's actual conduct is irrelevant to the inquiry . . . .").  Because there is no factual dispute and the parties had an opportunity to brief the issue, we are persuaded that we may reach the legal issue of whether the respondent's conviction constitutes a crime of violence, even though the Immigration Judge did not.

To constitute an aggravated felony under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F), the respondent's conviction has to have been for a crime of violence under 18 U.S.C. § 16(a) (2018), for which the term of imprisonment was at least 1 year.  *Cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1215–16 (2018) (holding that the crime of violence provision at § 16(b) is unconstitutionally vague in the immigration context).  A crime of violence under 18 U.S.C. § 16(a) is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

In the context of the crime of violence definition under §16(a), we follow the Supreme Court's decisions in *Stokeling v. United States*, 139 S. Ct. 544 (2019), and *Johnson v. United States*, 559 U.S. 133 (2010).  *See Matter of A. Valenzuela*, 28 I&N Dec. 418, 423 (BIA 2021) (applying *Stokeling* to determine whether a conviction is for an aggravated felony crime of violence); *Matter of E. Velasquez*, 25 I&N Dec. 278, 282 (BIA 2010) ("*Johnson* controls our interpretation of a 'crime of violence' under § 16(a)." (footnote omitted)).  In *Johnson*, the Supreme Court held that "the phrase 'physical force,' means *violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140.  Later, in *Stokeling*, the Court clarified that the "physical force" defined in *Johnson*

---

[5]  We thank the parties for their thoughtful analyses of this issue within their supplemental briefs.

"includes the amount of force necessary to overcome a victim's resistance." 139 S. Ct. at 555.

Second degree burglary under New York law is not a categorical crime of violence. For example, a person commits second degree burglary under subsection (2) when he or she knowingly enters or remains unlawfully in a dwelling with intent to commit a crime. N.Y. Penal Law § 140.25(2). The conduct underlying section 140.25(2) does not necessarily include the use, attempted use, or threatened use of physical force against the person or property of another.[6] As the statute is divisible and the respondent concedes he was convicted under section 140.25(1)(d), we will determine whether a conviction under this section is categorically a crime of violence. *Cf. Stuckey v. United States*, 878 F.3d 62, 67 (2d Cir. 2017) ("Both the government and Stuckey agree that he was convicted under N.Y. Penal Law § 106.15(3) and (4), and thus we must apply the categorical approach only as to these subsections.").

At the time of conviction, section 140.25(1)(d) of the New York Penal Law provided:

> A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:
>     1. In effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime:
>        . . . .
>        (d)Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

The respondent contends that his conviction does not require that the display of a firearm involve a victim. He contrasts New York's burglary statute with robbery under New York law, which has a requisite element of forcible stealing. *See United States v. Ojeda*, 951 F.3d 66, 72 (2d Cir. 2020) (holding that first degree robbery is a "violent felony" under the Armed Career Criminal Act ("ACCA") because "it is not possible to satisfy the forcible taking element of New York robbery without physical force as

---

[6]  We acknowledge that the United States Court of Appeals for the Second Circuit has held a conviction under section 140.25(2) is a crime of violence for the purpose of determining whether a defendant is subject to sentencing as a "career offender" under the United States Sentencing Guidelines. *United States v. Hendricks*, 921 F.3d 320, 331–32 (2d Cir. 2019). However, the court made clear that the determination was based upon the residual clause. *See id.* at 332. The Second Circuit specifically considered the vagueness issue and determined that "[s]entencing [g]uidelines are not subject to void-for-vagueness challenges." *Id.* In contrast, the INA's aggravated felony crime of violence is defined by 18 U.S.C. § 16. As 18 U.S.C. § 16(b) has been determined to be unconstitutionally vague in the immigration context, the *Hendricks* holding is inapplicable here. *See Dimaya*, 138 S. Ct. at 1223.

defined by the Supreme Court"). Forcible stealing is defined as when a person "uses or threatens the immediate use of physical force *upon another person*" for certain specified purposes. N.Y. Penal Law § 160.00 (McKinney 2023) (emphasis added). According to the respondent, section 140.25(1)(d) does not require that a victim be present or that the defendant be aware that another person witnessed the display of what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, and thus the statute does not necessarily involve the use, attempted use, or threatened use of physical force against the person or property of another. For the following reasons, this argument is unpersuasive.

Under New York law, in order to display what appears to be a listed weapon, another person must be present to witness it. *See People v. Baskerville*, 457 N.E.2d 752, 756 (N.Y. 1983). This requirement is consistent with the common understanding of the word "display." The Merriam-Webster's Dictionary defines "display," in relevant part, as "to put or spread *before the view*[;] . . . to make evident[;] . . . to exhibit ostentatiously." *Display*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) (emphasis added). The use of the word "view" necessarily implies a viewer. The plain language in the statute of "what appears to be" also works in conjunction with the term "display," indicating that a person other than the perpetrator must perceive what appears to be a weapon. New York's model jury instructions reflect this common understanding of the word "display," stating that:

> "A person DISPLAYS what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm when that person *consciously* displays or manifests the presence of an object that can reasonably be perceived as a pistol, revolver, rifle, shotgun, machine gun or other firearm, and *when the person to whom that object is displayed or manifested* perceives it as a pistol, revolver, rifle, shotgun, machine gun or other firearm. It need not be shown, however, that the object displayed was in fact a pistol, revolver, rifle, shotgun, machine gun or other firearm."

N.Y. Crim. Jury Instr. & Model Colloquies, Penal Law § 140.25(1)(d) (emphasis added). These instructions contemplate that the conscious display of what appears to be a firearm will be in front of a person.[7]

This definition of display is drawn from a line of robbery cases. *See People v Lopez*, 535 N.E.2d 1328, 1330–31 (N.Y. 1989); *Baskerville*, 457 N.E.2d at 755–56. Robbery is distinct from burglary, as robbery involves the forcible stealing from a person. *See* N.Y. Penal Law § 160.00. However, both robbery and burglary can have the same aggravating element

---

[7] The jury instructions are intended as model instructions and the drafters recognize that certain cases might call for tailored instructions.

of displaying what appears to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm. New York courts apply the canon of statutory construction that "[w]here the same word or group of words is used . . . in different statutes, if the acts are similar in intent and character[,] the same meaning may be attached to them." *People v. Thomas*, 121 N.E.3d 270, 274 (N.Y. 2019) (alteration in original) (quoting *People v. Duggins*, 821 N.E.2d 924, 945 (N.Y. 2004)).

Consistent with this statutory construction, New York courts have applied the same definition of "display" for both robbery and burglary cases. In *People v. Moore*, 521 N.Y.S.2d 297, 298 (N.Y. App. Div. 1987), a New York court described the display provision under the robbery statute as "analogous" to the display requirement in section 140.25(1)(d) of the New York Penal Law. Similarly, in *People v. Ray*, 584 N.Y.S.2d 620, 621 (N.Y. App. Div. 1992), the court applied the conscious display standard used in robbery cases in vacating a first-degree burglary conviction.[8] In that case, a defendant, in the course of a burglary, exited through a "side door carrying the shotgun in both hands . . . using it to hold bags of other items in his arms." *Id.* Neither the complaining witness "nor the arresting officer testified that they believed that they were being threatened with use of the gun." *Id.* The court found insufficient evidence that the defendant "'consciously display[ed]' the shotgun 'with the intent of compelling an owner of property to deliver it up or for the purpose of preventing or overcoming resistance to the taking.'" *Id.* (alteration in original) (quoting *Baskerville*, 457 N.E.3d at 756). Even though the shotgun was visible, that visibility did not constitute a "display" sufficient to establish culpability for burglary under New York law.

---

[8] Burglary in the first degree, similar to second degree burglary, can be committed when a defendant "[d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 140.30(4) (McKinney 1992). First degree burglary does have the "affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." *Id.* However, this affirmative defense does not "constitute a defense to a prosecution for, or preclude a conviction of, burglary in the second degree, burglary in the third degree or any other crime." *Id.* Given the plain similarity between the statutes, the requirement of a conscious display would seem to apply equally for first and second degree burglary. It is well-established that second degree burglary is a lesser-included offense of first degree burglary under New York law. *See People v. Smith*, 132 N.Y.S.3d 498, 500 (N.Y. App. Div. 2020) (collecting cases); *People v. Ortiz*, 170 A.D.3d 892, 893 (N.Y. App. Div. 2019) (same). Here, the relevant distinction between first and second degree burglary is that the former is of a dwelling, while the latter of a building. *Compare* N.Y. Penal Law § 140.30(4), *with* N.Y. Penal Law § 140.25(1)(d). A dwelling by definition is a subset of a building. *See* N.Y. Penal Law § 140.00(3).

We are thus not persuaded by the respondent's argument that a "display" can occur without a victim present. Although section 140.25(1)(d) does not expressly reference a victim, any uncertainty is resolved by how New York state courts interpret the phrase "[d]isplays what appears to be" a listed weapon. *See Gill v. INS*, 420 F.3d 82, 90 (2d Cir. 2005) (relying on New York state court interpretations of its own criminal laws in applying the categorical approach). The New York Court of Appeals has required that the display "actually be witnessed in some manner by the victim, i.e., it must appear to the victim by sight, touch or sound that he is threatened by a firearm." *Baskerville*, 457 N.E.2d at 756. This requirement of a conscious display applies in burglary cases and is fully consistent with the statutory language of section 140.25(1)(d). *See Ray*, 584 N.Y.S.2d at 621. New York courts thus do not merely require a third party to be present but be an actual victim.

We further conclude that displaying what appears to be a firearm during the course of a burglary necessarily involves the use, attempted use, or threatened use of physical force. In *Stuckey v. United States*, the Second Circuit examined first degree robbery under New York law and held that the display of "what appears to be" a firearm by a fellow participant in the crime renders the offense a violent felony under the ACCA. 878 F.3d at 70–72. The Court reasoned that, while strict liability attached to the display of the weapon or apparent weapon, that display, coupled with the intent to commit a crime, satisfies the "plain text" of the ACCA, which requires the offense have as an element "the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 68–71 (citation omitted).

This conclusion is consistent with decisions from across the federal circuit courts. *See*, *e.g.*, *United States v. Carter*, 961 F.3d 953, 958 (7th Cir. 2020) ("Brandishing a deadly weapon in the context of an assault threatens 'force capable of causing physical pain or injury to another person.'" (citation omitted)); *United States v. Gobert*, 943 F.3d 878, 881–82 (9th Cir. 2019) (rejecting an argument that "using a display of force with a dangerous weapon that reasonably causes a victim to fear immediate bodily injury does not necessarily require the use or threatened use of violent force against another").

The display of what appears to be a firearm while committing second degree burglary is essentially a criminal threat of force or violence and distinguishes this statute from a statute that covers only ordinary burglaries. "[A] person who intends to, and does, place another in fear of imminent physical injury by displaying what appears to be a deadly weapon has communicated an intent to inflict physical harm and, thus, threatened the use

of force." *United States v. Ovalle-Chun*, 815 F.3d 222, 227 (5th Cir. 2016).[9] It is this inherent threat of violence, coupled with the intent to commit a crime, as described in *Leocal v. Ashcroft*, 543 U.S. 1, 9–10 (2004), that makes the type of burglary at issue here a confrontational crime, and brings subsection (1)(d) within the purview of a crime of violence as described in 18 U.S.C. § 16(a). The confrontational nature of second degree burglary under section 140.25(1)(d) of the New York Penal Law categorically involves the use, attempted use, or threatened use of physical force.

## III. CONCLUSION

We thus conclude that a conviction for displaying what appears to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm while committing burglary under section 140.25(1)(d) of the New York Penal Law necessarily involves the use, attempted use, or threatened use of physical force against the person or property of another and therefore constitutes an aggravated felony crime of violence. The respondent is therefore removable from the United States. Termination of his removal proceedings is not appropriate.

The respondent has not meaningfully appealed the Immigration Judge's summary denial of adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a) (2018), in conjunction with a waiver under section 212(h) of the INA, 8 U.S.C. § 1182(h) (2018). These claims are thus waived. *Matter of Garcia*, 28 I&N Dec. 693, 693 n.1 (BIA 2023).

Accordingly, the following order will be entered.

**ORDER:** The appeal is dismissed.

*CONCURRING AND DISSENTING OPINION:* Denise G. Brown, Temporary Appellate Immigration Judge

I respectfully dissent from that portion of the majority opinion that holds that second degree burglary under section 140.25(1)(d) of the New York Penal Law is categorically an aggravated felony crime of violence under section 101(a)(43)(F) of the Immigration and Nationality Act ("INA"),

---

[9] Courts have long recognized that displaying something that appears to be a weapon can have the same consequences as displaying an actual weapon. *See, e.g.*, *United States v. Dixon*, 982 F.2d 116, 122 (3d Cir. 1992) (holding that a perpetrator who placed a towel over her hand to give the appearance of having a gun "created a risk that [her] actions would provoke a violent response by victims or the police"); *United States v. Shores*, 966 F.2d 1383, 1387 (11th Cir. 1992) (observing that "possession of a toy gun, by itself, can play an integral part in the crime").

8 U.S.C. § 1101(a)(43)(F) (2018).  As an initial matter, I have reservations that this case is an appropriate means through which to establish binding precedent on this issue as the Immigration Judge did not reach it.  While the parties have had an opportunity to address the issue through supplemental briefing, we lack the benefit of the Immigration Judge's reasoning.  It is our role to "review" questions of law de novo, 8 C.F.R. § 1003.1(d)(3)(ii) (2023), but there is no underlying decision regarding whether the respondent was convicted of an aggravated felony crime of violence for us to review here.

Further, I disagree with the majority's analysis by which it concludes that a violation of section 140.25(1)(d) of the New York Penal Law is categorically a crime of violence.  Section 140.25(1)(d) provides that a person is guilty of burglary in the second degree:

> when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when
>     . . . [i]n effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime
>     . . .
>     . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 140.25(1)(d) (McKinney 2017).  A crime of violence under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F), is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a) (2018).

I disagree with the majority that second degree burglary under section 140.25(1)(d) includes as an element the use, attempted use, or threatened use of physical force against another person.  In my view, second degree burglary under section 140.25(1)(d) does not include any element that requires the presence of a person other than the defendant.  In the absence of an element that requires the presence of a person, the majority's conclusion that this offense is a crime of violence is unavailing.  *See Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) ("The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual.").

The majority's analysis heavily relies on case law involving robbery to support its conclusion that second degree burglary under this subsection is a crime of violence.  But under New York law, robbery always involves forcible stealing from a person and burglary does not.  In *United States v. Ojeda*, 951 F.3d 66, 71 (2d Cir. 2020), the Court of Appeals for the Second Circuit rejected the defendant's argument that it was possible to commit New York first degree robbery with the aggravating factor of the display of an

apparent weapon without the use, attempted use, or threatened use of physical force. The court held that the defendant's argument ignored the foundational element being aggravated, i.e., forcible stealing, which is defined in New York to include the use or threatened immediate use of physical force upon another person. *Id*. at 72. Forcible stealing is an element for every degree of robbery in New York and "that element categorically requires the use of physical force." *Id*. Thus, New York robbery *always* includes as an element the use or threatened use of physical force *against another person*, regardless of whether an apparent weapon is displayed. Accordingly, the New York robbery statutes are distinguishable from the burglary statute at issue here, and thus the case law relied upon by the majority relating to robbery is not persuasive in this context. For the same reason, the case law cited by the majority relating to assault is likewise unpersuasive.

The majority also relies on the definition of "display" in the New York model jury instructions to conclude that a display of an apparent weapon must be in front of a person. The majority concludes that "display" in the context of section 140.25(1)(d) necessarily means a conscious display of an apparent weapon to a victim. "Display" as described by the model jury instructions does not constitute the use, attempted use, or threatened use of physical force against another person because, as the Supreme Court explained in *Borden*, "against the person of another" means "in opposition to" and expresses "a kind of directedness or targeting" rather than being akin to "waves crashing against the shore." *Borden*, 141 S. Ct. at 1825–26. However, the language of the model jury instructions—i.e., describing display to be "manifest[ing] the presence of an object that can reasonably be perceived" as a weapon—does not require the type of directedness or targeting described in *Borden*. N.Y. Crim. Jury Instr. & Model Colloquies, Penal Law § 140.25(1)(d) (May 2018). The language instead appears to contemplate that a person be "the mere recipient" of the display. *Borden*, 141 S. Ct. at 1826.

Even if the majority's conclusion were correct that display of an apparent weapon necessarily contemplates the presence of a person to perceive it and that it necessarily involved conduct directed at another person as contemplated by *Borden*—a conclusion not supported by the actual language of section 140.25(1)(d)—there is nothing in the statute that requires the person perceiving the display to be the victim of the crime, rather than a bystander or another defendant.

The majority's conclusion that an offense under section 140.25(1)(d) is categorically a crime of violence also assumes that the crime a defendant intends to commit is necessarily a "confrontational crime." But there is nothing in the statute that connects the display of an apparent weapon with

the crime the defendant has "intent to commit [in the building]," and thus nothing in the statute that requires the crime a defendant has "intent to commit [in the building]" to be a confrontational crime, as the majority concludes.  N.Y. Penal Law § 140.25.

For these reasons, I am not persuaded by the majority's conclusion that an offense under section 140.25(1)(d) of the New York Penal Law is categorically a crime of violence.  I would instead conclude that it is not and that therefore the respondent is not removable as charged.